UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:17-CR-43-REW-HAI-9 |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| DAVID RUSSELL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

*** *** *** ***

On referral from District Judge Wier, the Court considers reported violations of supervised release conditions by Defendant David Russell.[1]

District Judge Van Tatenhove entered Judgment against Defendant in May 2018 after Defendant pleaded guilty to one count of being a felon in possession of a firearm. D.E. 316. Defendant was sentenced to 68 months of imprisonment followed by three years of supervised release. *Id*. at 2-3. Defendant was released on November 10, 2022.

**I.**

On January 10, 2024, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. Defendant was being supervised in the Eastern District of Tennessee, and the Report was initiated by information received on January 9 from Defendant's Tennessee probation officer Erin Hicks. The Report charges four violations. Defendant ultimately stipulated to Violations #1 and #2 and the government ultimately moved to dismiss Violations #3 and #4.

---

[1] The initial Violation Packet was mistakenly sent to Judge Van Tatenhove, who subsequently signed it. Judge Wier's chambers then informally approved the referral.

The Report details repeated methamphetamine use, starting in October 2023. It states:

> On October 19, 2023, Russell submitted a urine sample for testing which tested presumptively positive for amphetamines, methamphetamine, and THC. Russell admitted to using methamphetamine on October 14, 2023 and to using THC on October 18, 2023. Officer Hicks advised that Russell was referred to outpatient counseling at Ridgeview Behavioral Health System.
>
> On November 8, 2023, Russell submitted a urine sample for testing at Midway Rehabilitation Center a contracted service agency for U.S. Probation in ED/TN. The urine sample was sent to Abbott Laboratory and was confirmed positive for amphetamines/methamphetamine, and THC. Officer Hicks advised that Russell was referred and enrolled in inpatient treatment at Journey Pure in Murfreesboro, TN on November 27, 2023, but left the program without completion.
>
> On January 5, 2024, Russell submitted a urine sample for testing at Midway Rehabilitation Center. The urine sample tested presumptively positive for amphetamines, methamphetamine, THC, and fentanyl. The sample was sent to Abbott Laboratory for confirmation and remains pending. On January 8, 2024, Officer Hicks spoke with Russell via telephone regarding the presumptive positive urine screen results. Russell admitted he has continued to use methamphetamine and THC. Russell was instructed by Officer Hicks to return to inpatient treatment immediately.

Violation #1 alleges Defendant violated the condition that prohibits unlawful use of a controlled substance and the condition that prohibits using a controlled substance except as prescribed by a physician. This is a Grade C violation.

Drawing on the same conduct, Violation #2 charges a violation of the condition prohibiting commission of another federal, state, or local crime and the condition that prohibits unlawful possession of a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of marijuana and methamphetamine, on account of his prior drug conviction, constitute a Class E felony under 21 U.S.C. § 844(a).

2

Violation #3 reports an arrest and alleges an additional violation of the condition prohibiting commission of a crime. According to the Report:

> On January 8, 2024, Russell was charged and arrested in Knoxville, Tennessee by the Knoxville Police Department for: Driving While License Suspended, in violation of Tennessee Code Annotated (TCA) Section 55-50-504; Possession Unlawful Drug Paraphernalia Uses & Activities, in violation of TCA Section 39-17-425; and Simple Possession/Casual Exchange, in violation of TCA Section 39-17-418.

This is a Grade C violation.

Violation #4 alleges a violation of the condition that requires Defendant to participate in substance abuse treatment as directed by the probation officer. According to the Report, "Russell was referred for inpatient treatment at Journey Pure and entered the program on November 27, 2023. Russell left the program before completion. On January 5, 2024, Officer Hicks instructed Russell to return to the inpatient treatment facility. Russell did not." This is a Grade C violation.

On January 25, the USPO issued an Addendum to the Report. The Addendum states that results from the January 5 sample were obtained on January 16, and the sample was positive for fentanyl.

On February 21, the USPO issued a Second Addendum. It reports that the charges described in Violation #3 were dismissed on February 20, 2024. The Second Addendum also clarifies Violation #4 and states:

> as noted[,] Russell entered Journey Pure inpatient treatment program on November 27, 2023. Russell left the program on December 3, 2023, against treatment advice. The discharge summary from Journey Pure At the River LLC is attached for review.
>
> On January 10, 2024, Russell entered Landmark Recovery of Knoxville, however, [he] left the program 13 days later, against staff advice on January 23,

3

2024. On January 24, 2024, Russell was arrested by the [Marshals Service] based on the violation warrant.

Defendant was arrested in East Tennessee and appeared in court there for transfer proceedings on January 25. D.E. 578. On January 29, 2024, this Court conducted an initial appearance pursuant to Rule 32.1. D.E. 581. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant argued for release to an inpatient substance abuse treatment program. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on February 22, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 585. Defendant competently entered a knowing, voluntary, and intelligent stipulation Violations #1 and #2. For purposes of Rule 32.1 proceedings, Defendant admitted unlawfully using marijuana and methamphetamine. He explained he did not knowingly take fentanyl; there must have been fentanyl in some purported meth that he took. The government thus established these two Violations under the standard of section 3583(e). The government also orally moved to dismiss Violation #3 and Violation #4.

## II.

The Court has evaluated the entire record, the Report, Addenda, and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty

4

to being a felon in possession of a firearm, a Class C felony. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(8). A Class C conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violation #2. Given Defendant's criminal history category of V (the category at the time of the conviction) and Grade B violation,[2] Defendant's range, under the Revocation Table of Chapter Seven, is 18 to 24 months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Under 18 U.S.C. § 3583(h), the authorized reimposition of a term of supervised release is not more than three years, less any term of imprisonment imposed upon revocation.

### III.

At the final hearing, the government argued for a revocation sentence of 21 months' incarceration, followed by twelve months of supervised release. The defense asked for eighteen months of imprisonment, followed by eighteen months of supervision. The defense requested that Defendant be housed at a facility with a MAT (Medically Assisted Treatment) program so

---

[2] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

5

Defendant can continue the suboxone treatment he has received since 2009. The defense also asked for intensive outpatient treatment upon release.

The government focused first on Defendant's recent history of poor compliance with supervision and the law. Although this is Defendant's first revocation proceeding in this case, he has a recent history of being a felon in possession of a firearm and using meth while on supervision. As described in paragraph 54 of the PSR, in September 2011, Defendant was convicted in federal court in Knoxville of being a felon in possession of a firearm. He was released on federal supervision in December 2013. In the fall of 2014, his release was revoked for, among other things, illegal drug use including marijuana and methamphetamine. He was sentenced to seven months of imprisonment, plus 29 months of supervision. Defendant was released again in August 2015. He immediately tested positive for meth and marijuana. His release was revoked again in February 2016. He was sentenced to seventeen months' imprisonment with no additional supervision to follow. Defendant was released again in June 2017. Just 45 days later, he possessed the firearms that led to his conviction in this Court (*see* D.E. 11 at 3-4). This series of events, according to the government, indicates a propensity to reoffend and poses a danger to the public.

According to the government, there have been "lots of attempts at intervention." Since entering the federal system, Defendant had drug treatment in the BOP and other opportunities (while on supervision) that he had not embraced. Pointing to the Second Addendum, the government suggested Defendant may not yet be serious about quitting drugs. The Second Addendum alleges that Defendant left both the Journey Pure program and the Landmark Recovery program.

According to the government, Defendant has a lengthy history of meth use that keeps sending him back to prison, including his combined 24 months of revocation imprisonment in the Eastern-District-of-Tennessee case. The current violations include a series of three positive drug tests over a series of months. And Defendant has an aggravated burglary conviction and multiple assault convictions in his criminal history. The government gave Defendant "some credit" for admitting his drug use but considers the case "egregious" even on just the first two violations. "He's just constantly using meth." The government requested a "normal" drug-treatment assessment upon release.

The defense stressed that Defendant works as a construction foreman for his father's company and would have a job upon release. Defendant still has a good family support system. His father and fiancée attended the hearing, and defense counsel provided letters of support from Defendant's father and sister that counsel has been ordered to file in the record.

The defense agreed Defendant used drugs multiple times beginning in October, but disputed any use before that which might be suggested in the record. Defendant has used meth since age seventeen, and meth has been his "drug of choice" for "a long time." He had no knowledge of using fentanyl prior to the positive drug tests.

The defense disputed the government's suggestion that Defendant was not wanting treatment or was not ready for help. Turning to the Journey Pure records attached to the Second Addendum, the defense argued that Defendant was diagnosed with multiple mental-health disorders and was reported as being cooperative and polite. The defense explained that Defendant was so heavily medicated that he could not think clearly and did not feel like himself. It was under these circumstances that he left treatment.

The defense also pointed out that, after the January 5 positive test, the probation officer directed Defendant to go to inpatient treatment. It was while Defendant was driving to inpatient treatment that he was arrested as described in Violation #3. Defendant then bonded out and went directly to Landmark. At Landmark, Defendant's roommate punched him and stole his food. Defendant was told a warrant had issued for his arrest. Defendant then left Landmark to say goodbye to his fiancée before his arrest.[3] Defendant did not flee; he was arrested the next morning. He knew he would be arrested and that he would not be able to finish his inpatient treatment at Landmark.

Additionally, Defendant's brother died of a fentanyl overdose two months prior to his release. The resultant grief and remorse contributed to Defendant's resumption of drug use.

Defendant addressed the Court. He said he takes full responsibility. He apologized to his family. He has had a drug problem since he "was a kid." Journey Pure was his first "real rehab," as the BOP's program was not as extensive as RDAP. He said his probation officer was fair and firm. He complied with Probation despite knowing that he would "test dirty." He just could not quit using drugs. Defendant said that, although he was "a monster" during his prior federal supervision, this time he did not try to run. He is different now, forty years old and a grandfather. Defendant said suboxone treatment has saved his life by keeping him off oxycodone, to which he is also addicted. He said he knows he needs treatment and argued that a long prison term would not help him.

---

[3] Defendant's fiancée Jessica Richards is also on federal probation; the two are cleared by the USPO to live together.

8

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Neither party argued that this exception applies.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The undersigned recommends a within-Guidelines sentence of 21 months' incarceration, followed by fifteen months on supervision. This is the maximum supervision period remaining and is warranted to protect the public. The undersigned also recommends placement in a facility with a medication-assisted-treatment program and an assessment for treatment upon release.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR, Defendant was found to be in possession of firearms during the investigation of a methamphetamine conspiracy of which he was not a member. He was however apparently a

customer, and Defendant's drug addictions have driven his criminal history and his history of supervision violations.

The Court next considers Defendant's history and characteristics. Defendant's recent East Tennessee conviction and subsequent revocations have already been discussed. After being released on his second revocation incarceration (of 17 months), within six weeks he committed the underlying gun-possession felony in this case. Although he has a history of supervision revocations, they have not provoked compliance when it comes to drug use. He keeps repeating the same conduct, having guns and then using meth. The seriousness of this criminal record requires a serious consequence in this matter.

The Court also considers the need to deter criminal conduct and protect the public. This factor weighs heavily in light of Defendant's recent history of federal convictions and revocations. He is dangerous when using drugs, and his drug use furthers the illicit drug trade. Especially alarming is his apparently unknowing use of fentanyl, the same drug which killed his brother.

Another factor focuses on opportunities for education and treatment. It appears Defendant's firearm convictions render him ineligible for the BOP's RDAP program. He reports that suboxone treatment has kept him off oxycodone, and he seeks more intensive treatment for his meth addiction. The Court will recommend placement in a facility with a MAT (suboxone) program and that he be evaluated for treatment upon release. Perhaps he will be referred to the intensive outpatient treatment he hopes for.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction

primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach here is significant in that it follows an earlier federal firearm conviction in Tennessee that resulted in two revocations for drug use. The Court credits Defendant for accepting responsibility here, but his drug habit poses a danger to himself and the community.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. And neither side argued for a variance. For the reasons discussed herein, the Court finds the recommended sentence is sufficient, but not greater than necessary, to address the pertinent penalty factors.

## V.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon the government's motion, Violation #3 and Violation #4 be dismissed.

2. That, upon his stipulation, Defendant be found guilty of Violation #1 and Violation #2.

3. Revocation with a term of imprisonment of 21 months, followed by fifteen months of supervised release

4. If possible, placement in a facility with a MAT program.

5. Assessment for substance abuse treatment upon release.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i).

Within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 27th day of February, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge